**UNITED STATES of America,**
**Appellee,**

v.

**Garry Albert RONNE, Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**Donald Lester WOOLERY, Jr., Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**Terry Lynn FRENCH, Appellant.**

**UNITED STATES of America,**
**Appellee,**

v.

**Lowell Keith DITMARS, Jr., Appellant.**

Nos. 23817, 23837, 23629, 23788.

United States Court of Appeals
Ninth Circuit.

Aug. 7, 1969.

---

William M. Hardy (argued), San Jose, Cal., Clark A. Barrett (argued), San Mateo, Cal., for appellants.

Paul G. Sloan (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., Crim. Div., San Francisco, Cal., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and KILKENNY, District Judge *.

* The Honorable John F. Kilkenny, United States District Judge for the District of Oregon, sitting by designation.

HAMLEY, Circuit Judge:

■ Defendants Ronne, Woolery, French and Ditmars, all I–O conscientious objectors in the selective service system, appeal from their respective convictions for failure to report for assigned civilian work in lieu of induction into the Armed Forces. Their appeals were consolidated for hearing and disposition, together with that of the appellant in United States v. Hughes, 9 Cir., 414 F.2d 1330.[1]

In all five appeals the principal arguments advanced for reversal are the same. While there are variations in the evidence received in each case, there exists sufficient similarity so that a determination of the common issues by this court in one of the appeals will control disposition of those issues in the other appeals. Accordingly, our decision rendered on July 25, 1969, in United States v. Hughes is dispositive of the principal contentions advanced in the four above-entitled appeals.

In the *Ronne* and *Ditmars* appeals, however, additional issues are raised which are not disposed of by the *Hughes* decision. These additional issues are discussed below.[2]

### Ronne Appeal

Ronne contends that the appeal board arbitrarily failed to classify him as a minister of religion (IV–D). Had he been given such a classification he would not have been subject to either induction or a board order to perform civilian work in lieu of induction. Daniels v. United States, 9 Cir., 372 F.2d 407, 409, n. 2.

■ As the Government concedes, Ronne was at one time a Pioneer Minister in Jehovah's Witnesses and, as such, was entitled to a ministerial classification. However, there is a basis in fact in the record for the apparent conclusion of the board of appeal that his ministerial activity was thereafter discontinued to such an extent that he not only had abandoned his status as a Pioneer Minister but had, in other respects, dropped off his ministerial activity to the point where there was no reasonable basis for such a classification. United States v. Tichenor, 6 Cir., 403 F.2d 986, relied upon by Ronne, is distinguishable since in that case the sole basis for denying a IV–D classification was that Tichenor was not certified by his church as a "Pioneer." The board in that case apparently took the position that it was necessary to be so certified in order to qualify for the IV–D classification.

■ Ronne also argues that he was deprived of due process of law because he allegedly did not have a reasonable opportunity to meet with the local board at the 32 C.F.R. § 1660.20(c) meeting held on March 29, 1967. Upon receiving notice of that meeting, Ronne wrote to his local board in Ukiah, California, advising that he had just found employment in Olympia, Washington, and asking that his file be transferred to the local board in Olympia. The clerk of Ronne's local board wrote to him air mail special delivery on March 27, 1967, stating that there was no provision for such a transfer. The meeting was held on the appointed day in Ronne's absence.

1. The Government asks for dismissal of the *French* appeal on the ground that the notice of appeal was not timely. The judgment of conviction was filed on November 22, 1968, and the notice of appeal was filed on December 4, 1968. Rule 4(b), Federal Rules of Appellate Procedure, provides that in a criminal case the notice of appeal by a defendant shall be filed in the district court within ten days after the "entry" of the judgment or order appealed from. That rule further provides: "A judgment or order is entered within the meaning of this subdivision when it is entered in the criminal docket." While French's judgment was filed on November 22, 1968, it was not entered in the criminal docket until November 25, 1968. The notice of appeal was filed within ten days of that date and is therefore timely.

2. While Woolery and French also assert that they have additional issues, we find that such issues are disposed of by our holding in *Hughes*.

On the next day, March 30, 1967, Ronne telephoned the assistant clerk of the board, presumably from Olympia, stating that he had not, until that day, received the board's letter of March 27, 1967. Ronne told the clerk that he had not received the notice of the meeting, dated March 15, 1967, until March 24, 1967, since he had been looking for work and had therefore not been at the address he had given to the board. He also stated that he could not afford to make the trip to Ukiah as he had been out of work and had just found a job. Ronne confirmed this conversation in a letter written to the board on March 31, 1967.

Ronne alleges that the clerk of the board did not advise the board members of the reason Ronne was unable to be present for the March 29, 1967 meeting. Whether or not the clerk so advised the members, the fact is that neither in his letters, nor in his telephone call, did Ronne ask to have the section 1660.20(c) meeting continued to another date. Nor is there any indication in his file that he ever requested a second opportunity to meet with the local board.

We hold that Ronne was not denied due process or any procedural right established by statute or regulation by reason of the fact that the section 1660.20 (c) meeting was held in his absence.

Ronne additionally argues that there is no showing that he "wilfully and knowingly" failed to report for civilian work. He alleges that he did not appear because the clerk of the local board advised him not to report for civilian work.

The assertion that the clerk advised Ronne not to report for civilian duty is based on his trial testimony with respect to what the clerk told him. This testimony is not corroborated by the agency file. According to that file, he telephoned the board office on May 11, 1967, and stated that he would not be reporting for civilian work since he was going to refuse such employment and did not want to incur any travel expense. He confirmed this statement in a letter to the board, basing his refusal to accept work upon religious grounds. He made no mention in the letter of any advice by the clerk that he did not need to report. The trial judge, as the fact-finder, was not required to accept Ronne's testimony concerning this matter.

■ There was ample evidence to show that Ronne wilfully and knowingly refused to perform assigned civilian work.

### Ditmars Appeal

Ditmars contends, in effect, that the local board disregarded applicable regulations and deprived him of due process of law in failing to classify him III–A. This classification is provided for in 32 C.F.R. § 1622.30. Insofar as here relevant, this regulation provides that there shall be placed in Class III–A any registrant whose induction into the Armed Forces would result in extreme hardship to his wife. 32 C.F.R. § 1622.30(b). Ditmars argues that the board should have placed him in this classification because his wife had had a series of major operations on her back, rendering her completely dependent upon him.[3]

At the oral argument at the close of Ditmars' trial, the only reason advanced by the Government why the board should not have reopened his classification to determine whether he should be reclassified III–A, was that a conscientious objector, classified I–O, is not eligible for a III–A classification. The record does not indicate the ground on

3. He alleges that he presented this information to the board in the following manner: (1) at his July 12, 1966 section 1660.20 (c) meeting with the board, Ditmars explained that his wife had not fully recovered from a back operation, and offered to obtain evidence of this fact, and (2) on September 6, 1966, the day on which he was ordered to report to the Los Angeles County Department of Charities for civilian work assignment his wife had a second operation on her back and he advised the clerk of the board of that fact on September 6, and stated that he wanted to appeal again.

which the trial judge, in Ditmars' non-jury trial, rejected the defense based upon the contention that Ditmars should have been reclassified III–A. It is therefore possible that the court rejected the defense on the ground urged at the trial by the Government.

The Government's position stated at the trial accurately reflected the rule of the Ninth Circuit in effect at the time of the trial on December 11, 1968. See Klubnikin v. United States, 9 Cir., 227 F.2d 87. However, in Petrie v. United States, 9 Cir., 407 F.2d 267, 278–281, an in banc decision rendered on February 12, 1969, this court overruled *Klubnikin* and held that a registrant classified I–O is eligible for a III–A reclassification. We see no reason, nor does the Government advance one, why the *Petrie* rule should not apply in this case.

On this appeal the Government does not renew its trial court argument that a I–O conscientious objector is ineligible for a III–A classification. Instead it presents two other reasons for rejecting this defense. These reasons are: (1) Ditmars did not ask the board to reopen his classification and grant him a hardship deferment; (2) the information Ditmars supplied the board concerning his wife's physical condition failed to establish a prima facie case for reopening to establish a III–A classification.

Had the Government advanced, in the trial court, these reasons for rejecting the III–A defense, the trial judge might or might not have found them meritorious.[4] Had the trial judge found them meritorious, we could have reviewed such determination on a more complete trial record than we now have.

We now turn briefly to another matter. At least one reason why Ditmars did not report on the appointed day was his desire to be with his wife, who was undergoing surgery on that day at a hospital. Ditmars did not specifically contend in the trial court that this circumstance negated wilfulness, an essential element of the offense with which he was charged. See Graves v. United States, 9 Cir., 252 F.2d 878, 881–882. In this court, however, the Government addressed itself to that question, arguing that notwithstanding this reason for failing to report, wilfulness was proved because the evidence showed that, in any event, Ditmars would not have reported for civilian work because of his conscientious objector beliefs. The issue thus presented, and unresolved in the trial court, is whether one who states that he will not report for civilian work because of his conscientious objections can be charged with wilfulness with respect to a particular failure to report as to which the registrant may have a separate bona fide excuse.

■ The Ditmars cause is remanded to the district court for the limited purpose of making findings concerning the following matters: (1) was the board's failure to reopen Ditmars' classification, in order to consider whether he should be granted a III–A classification, warranted on the ground either that Ditmars did not ask the board to reopen his classification and grant him a hardship deferment, or on the ground that the information he supplied the board concerning his wife's physical condition failed to establish a prima facie case for such a reopening, and (2) was the essential element of wilfulness with respect to

---

4. Among the circumstances which the trial court might have evaluated, had the Government's present contentions been advanced in the trial court, are the following: At the trial, both Ditmars and his wife testified that certain written representations concerning this matter were made to the board after September 6, 1966, but one or two doctor's reports which they said had been sent in, could not be found in the board file. Ditmars brought his wife to the board meeting held on July 12, 1966, so that she could explain her physical condition. However, according to the testimony of Mr. and Mrs. Ditmars, the clerk of the board, apparently without conferring with board members, required Mrs. Ditmars to wait outside. Prior to the trial, Mrs. Ditmars had a third back operation and seven discs have now been removed from her back.

Ditmars' failure to report for civilian work on the appointed day established notwithstanding the fact that he wished to be with his wife who was undergoing hospital surgery on that day.

The district court may, in its discretion, take additional evidence pertaining to these matters. If the district court finds in favor of the Government on both of these questions, it shall so report to this court, whereupon the appeal will be reinstated upon the present record as appropriately supplemented, and upon the present briefs, supplemented by simultaneous additional briefs to be filed within twenty days after the district court has reported to this court. If the district court finds in Ditmars' favor on one or the other of these issues, it shall vacate the judgment of conviction and enter judgment of acquittal.

The judgments in the appeals of Ronne, Woolery and French are affirmed.