**UNITED STATES of America,**
**Plaintiff,**

v.

**Stanley Oliver STEELE, Defendant.**
**Crim. A. No. 56–9–S.**

United States District Court
D. Massachusetts.

June 13, 1956.

Thomas P. O'Connor, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Hayden Covington, Brooklyn, N. Y., Clarence P. Kudisch, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

The defendant was indicted for violation of the Selective Service Act of 1948, as amended, Title 50, U.S.C.A.Appendix. § 462, for failure to report on August 30, 1954, to his local Selective Service Board for assignment to civilian work. He pleaded not guilty and was tried by the Court, having waived his right to a trial by jury. At the close of the evidence, a motion for judgment of acquittal was filed.

### Findings of Fact

The defendant registered with his local Board on January 9, 1951, and sub-

mitted his questionnaire on June 11, 1951. He stated that he had been employed since 1949, working forty hours per week as a lathe operator. He stated further that he was not married, and was opposed in conscience to participation in warfare in any form. On September 18, 1951, he was given a hearing to determine whether he was entitled to a deferment as a conscientious objector. He attended at the request of the Board, and informed them that he would not engage in defense work and that his employer was not under government contract. However, he was advised that his employer was under a government contract "for cantonment". On this first hearing, the defendant advised the Board that he was a member of the Jehovah's Witnesses sect, and he explained to the Board the basis for his refusal to engage in the national defense, as being a matter of belief. Thereafter, the defendant was classified 1–A by the Local Board, and he received a notice of classification which he forthwith appealed. On January 7, 1952, he filed a special questionnaire for conscientious objectors in which he stated that he understood that if he were so classified he would be required to perform twenty-four months of civilian work in the national health, safety or interest in lieu of induction. On January 25, 1952, the Appeal Board unanimously voted to classify him 1–A–O (conscientiously opposed to combatant service), and he was so notified on February 1, 1952. A physical examination was had and on May 1, 1952, he was advised of his acceptance. On January 16, 1953, the Board notified him to report for induction on February 20, 1953. On January 26, 1953, the Board received his letter stating that he would not report for military service as ordered. On January 29th, at the Board's request, the defendant appeared before the Chairman and claimed status as a minister of theology. He advised the Chairman that it was the Board's duty to confirm this status rather than his own.

On February 18, 1953, the State Director ordered the Local Board to postpone induction pending the Director's review of the file. The defendant had written the Director on March 9, 1953, accompanied by certificates of attestation to the defendant's status as an associate of the Jehovah's Witnesses sect. The case was re-opened by the Director remanding it to the Local Board for re-determination of the claimed ministerial exemption and cancellation of the 1–A–O classification. On April 15, 1953, another hearing was held. At this hearing he mentioned his marriage and was advised to submit data for dependency deferment, but he refused on the choice to seek exemption as a minister of religion. He still worked as a lathe operator, grossing $68 per week. The Board classified the defendant 1–O (conscientiously opposed to both combatant and non-combatant military service). He was ordered to work in a hospital. He told the Board again that he would not accept work as a civilian if classified a conscientious objector. The Board then classified him 1–A.

On May 11, 1953, he appealed this classification and informed the Board that his wife was pregnant. The Appeal Board reversed the classification of 1–A, and classified him 1–O (conscientious objector to combatant and non-combatant service) on December 12, 1953. He was advised of this classification and a further request for reconsideration was denied on the basis of the Appeal Board's classification.

His first claim for dependency was made on February 8, 1954, some five and one-half months after the effective date for submitting evidence in support of such claim under § 1622.30 of the Selective Service Regulations, 32 C.F.R., § 1622.30.

Further transactions to the effect that the defendant claimed to the Appeals Board that the Local Board had overlooked his evidence of dependency, submitted prior to August 25, 1953, and requesting reclassification, are unnecessary to consider.

The defendant's claim for dependency was denied in a separate hearing by the

Board, as being untimely requested. It was determined also that it would not be a hardship for the defendant to perform civilian work. On April 14, 1954, under authority of 32 C.F.R., § 1660.20(c), a conference between the Board and the defendant failed to produce any agreement as to a type of work for the defendant. Further, pursuant to regulations, 32 C.F.R., § 1660.20(a), on June 17, 1954, the State Director approved the Local Board's selection of New England Deaconess Hospital for the defendant's work. He did not comply with this order.

I conclude and rule that in none of the unilateral or bilateral transactions of the Local Board or of the Board of Appeals was there that arbitrary, capricious, unreasonable, or otherwise unlawful conduct asserted by the defendant as the basis of his motion for judgment of acquittal. On the whole, I am rather impressed by the spartan extension of effort accorded by the Board to the defendant, which certainly went more than half the distance.

 The defendant was not denied due process in the Board's refusal to reopen his case to determine his entitlement to a dependency classification, because of his failure to satisfy the requirements of § 1622.30 of the Selective Service Regulations, 32 C.F.R., § 1622.30; Klubnikin v. United States, 9 Cir., 227 F. 2d 87, certiorari denied 350 U.S., 975, 76 S.Ct. 453. Specifically, I find that by his determined failure to introduce evidence of dependency he waived the benefit of subsection (a), and I find and rule that the weekly wage he would have earned as a hospital attendant would not be so disproportionate to his customary wage as a lathe operator as to constitute a hardship under subsection (b).

 The evidence establishes that the Board was within its power in denying the ministerial classification, as the terms of ministerial classification are defined in 50 U.S.C.A.Appendix, § 466(g). See also Dickinson v. U. S., 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. The burden of establishing his qualification as a minister of religion is the defendant's, and I rule that in this case the defendant did not discharge that burden. See also Cox v. U. S., 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59, to the effect that the Court is limited by the evidence offered to the Board and to the Appeals Board in determining whether the claimed status has been established.

 The defendant urges that the action of the Board in denying him the ministerial classification was motivated by caprice, restricted to the fact that he lacked a diploma or certificate from a theological seminary. In this argument I cannot concur. The determination was based on testimony of the defendant, as well as documentary support contained in his questionnaires and other applications. I find that there was no denial of due process in the Board's refusal to hear the attestation of the defendant's proposed witness. Under the Selective Service Regulations, 32 C.F.R., § 1624.1(b), the Board has discretion to permit a registrant to introduce the testimony of witnesses. I find no abuse of this discretion in this instance, because there is no indication that the Board doubted any of the facts asserted by the defendant, apart from his assertion that he was a minister. This claim to exemption can hardly be characterized in the particular setting as a question of fact.

Furthermore, the order to report for work which is the basis of the indictment, was issued in accordance with the classification of the Appeals Board, which is a superior and separate classification. See Falbo v. U. S., 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305; U. S. v. Hartman, 2 Cir., 209 F.2d 366; Reese v. U. S., 9 Cir., 225 F.2d 766.

 The defendant's argument that the order of the Board is void for failure of the Board to appoint and promulgate the names of advisors to registrants merits attention. It was stipulated by counsel that no such appointments or promulgation was ever effected by the defendant's Board, during the time of his processing. The defendant has failed to es-

tablish in what way he was prejudiced by this omission. The cases abound in support of the principle that such an omission is not a sole force violation of due process. See, for instance, Uffelman v. U. S., 9 Cir., 230 F.2d 297; U. S. v. Rowton, D.C., 130 F.Supp. 189, recently affirmed in the Sixth Circuit Court of Appeals. Here, the testimony of witnesses, including the defendant, confirm my finding that the defendant was afforded full and fair counsel by the various members of the Board and the Board's Clerk, and was informed that he could consult with the government's Appeal Agent. He had six hearings, at which he freely discussed his questions and his position and was counseled by the Board members, officially and unofficially.

The contention that the order was invalidated because the defendant did not receive a second physical examination within ten days of the time of the issuance of the order is wholly without merit. See U. S. v. Thomas, D.C., 124 F.Supp. 411. The regulations do not place a time limit upon the Board's power to assign personnel, governed by his physical examination.

### Conclusions of Law

I find and rule that the assignment of the defendant to work at the New England Deaconess Hospital did not violate the defendant's constitutional right to freedom of religion, based on the present character of that institution as a nondenominational hospital.

I find and rule that none of the grounds of the defendant's motion are sufficient to warrant my entering judgment of acquittal.

I conclude and rule that the provisions of the Selective Service Regulations herein treated are constitutional, and that the conduct of the Local Board and the Appeals Board were in substantial accordance with these regulations.

I conclude and rule that the rights of the defendant were not impaired or prejudiced by the conduct of his case by the Selective Service agents involved in determining his status, rights, privileges, and obligations.

I conclude and rule that the order to report for work, the violation of which is charged in the indictment, is effective and valid.

The defendant's motion for judgment of acquittal is denied.